## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

ADRIANA MORET (n'ee VALBUENA),

   **Plaintiff,**

  v.

FRANCIS J. HARVEY, Secretary of the
Army,

   **Defendant.**

   **Civil Action No.  AW-04-3043**

---

## MEMORANDUM OPINION

  Plaintiff Adriana Moret, n'ee Valbuena, ("Plaintiff" or "Moret") brings this employment discrimination action against her employer alleging claims discrimination on the basis of sex and retaliation for having engaged in a protected activity, in violation of 42 U.S.C. § 2000(e), et seq., ("Title VII"). Currently before the Court are Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment [17] and Plaintiff's Motion to Stay or, in the alternative, Motion for Summary Judgment and to Permit Discovery Pursuant to Rule 56(f) [20].  The Court has reviewed the pleadings and applicable law and has determined that a hearing is unnecessary.  See Local Rule 105(6) (D. Md. 2004).  For the following reasons, Defendant's Motion for Summary Judgment is granted-in-part, and denied-in-part, and Plaintiff's Motion to Stay is denied-as-moot.

### FACTUAL & PROCEDURAL BACKGROUND

  The following facts are taken in the light most favorable to the nonmovant.  In September 1999, Moret interviewed with Lieutenant Colonel Olin Ohrt ("Ohrt").  Because Ohrt was unable to offer Moret

a paid position, she offered to volunteer her services without remuneration until a paid position became available. Upon receiving Moret's offer of services, Ohrt sent Moret to Dr. Ho Chung ("Dr. Chung"), Chief of the Department of Pharmacology at the Walter Reed Army Institute of Research ("WRAIR"), to discuss volunteer positions. Instead of accepting her offer of voluntary service without remuneration, Dr. Chung hired Moret for a paid Research Assistant position and offered to pay her out of his own contract money.

From September 1999 until May 2000, Moret performed her job functions without incident or discipline. On May 11, 2000, Moret received a message at home from Dr. Chung requesting her to come in to his office the next day to discuss the renewal of her new permanent contract. On May 12, 2000, Moret went to Dr. Chung's office to discuss her pay and benefits. Dr. Chung was alone in his office and he shut the door behind Moret. Dr. Chung sat down at his desk and asked Moret how much money she would like to make. Moret responded by asking what was customary for a person with her experience. Dr. Chung explained that it was irrelevant what others made because he had the power to pay her whatever she wanted. Dr. Chung further explained that he had a lot of connections within the Walter Reed supervisory command chain and would be able to give Moret full benefits. During the same meeting, Dr. Chung asked Moret if she had ever seen a picture of his children, whereupon he produced a photograph of his wife and two adult children. Dr. Chung then explained that he could envision Moret and his oldest son dating. Dr. Chung then picked up the phone and called his son, and he forced Moret to talk to his son on the telephone. While she was still on the telephone, Dr. Chung whispered to Moret not to tell anyone he had done this.

Also, during the May 12, 2000, meeting Dr. Chung asked Moret if she had "strong fingers." Dr.

Chung explained to her that he needed to relieve some back pain and that he wanted to teach Moret acupressure techniques.  Dr. Chung told her that he would bring in a book so she could look at it and learn about acupressure and massage.  Dr. Chung then asked Moret if she would come over to his house and massage him.  Dr. Chung told Moret not to say anything to anyone, especially anyone "American" because they would think of it as sexual harassment.  Dr. Chung said that since Moret is not American that she would be "OK" doing what he asked.  As he suggestively pointed to his buttocks, Dr. Chung told Moret that he especially needed a massage there.  Dr. Chung alternated discussing Moret's salary and benefits with asking Moret if she had "strong fingers," and Dr. Chung especially emphasized to Moret that he could "make things happen for her."  Moret walked out of Dr. Chung's office without saying a word.

Shortly after this incident, in August 2000, coincident with the time to finalize Moret's second year contract, Dr. Chung offered Moret less than he had originally offered, which was even less than what she was making at the time.  Dr. Chung also informed Moret that he would not provide her with benefits.

On October 17, 2000, Dr. Chung came into Moret's office and started talking to her about his personal domestic issues.  Dr. Chung asked Moret again if she had "strong fingers."  This time Moret told him "no."  Moret offered to get Dr. Chung a number from a friend who goes to a professional for acupressure.  Dr. Chung responded that he did not want to pay for professional services, but instead he wanted Moret to perform the massage and acupressure services.  In the same conversation, Dr. Chung again told Moret that he would deliver his acupressure book to her so that she could acquire the necessary skills to enable her to administer his nude massage.  Dr. Chung reminded Moret that he had the power to appoint her to a civil service position that would accord her full health benefits.  Dr. Chung directly implied that he would only appoint her to such a civil service position if she would comply with his requests.  Moret

3

responded to Dr. Chung's entreaty that he might consider instructing his wife on massage therapy.

After these interactions, Moret was forced to work with Dr. Chung on a daily basis. Dr. Chung continuously gawked at Moret, making her feel very uncomfortable and nervous. Specifically, Moret gained weight, was frightened for her safety, vomited on a weekly basis thinking of Dr. Chung, developed cystic acne, and had a strained relationship with her fiancé.

After several months of enduring Dr. Chung's continuous and unseemly conduct, on January 9, 2001, Moret reported Dr. Chung to Colonel Wilbur Milhous ("Milhous"), the Director of the Division of Experimental Therapeutics at WRAIR. Upon learning of Moret's allegations, Milhous blamed Moret for Dr. Chung's conduct, and dismissively stated that if one of his daughters had been subject to Dr. Chung's advances, his daughters would have handled Dr. Chung's entreaties more deftly. Milhous went on to "test" Moret on whether she knew the difference between sexual harassment and playful banter by telling Moret a fable about how monkeys interact.

Moret complained about Milhous to Col. John Brown ("Brown"), Executive Officer at WRAIR, who assured her that he would take affirmative steps to resolve the situation. Thereafter, Brown told Moret that he had ordered Milhous on January 26, 2001, to remove Dr. Chung from Moret's worksite so that Dr. Chung would have no further contact with Moret while an investigation was conducted. Brown explained that the purpose of the move was to allow Moret to move freely in and out of the General Pharmacology Department without being harassed by Dr. Chung. However, between January 30, 2001 and February 9, 2001, Moret discovered that Dr. Chung was still working in her building. On February 9, 2001, Moret filed an informal complaint with the EEO office at the WRAIR.

On February 20, 2001, Moret realized that Dr. Chung was never removed from his office. Brown

4

called the Division of Experimental Therapeutics and talked to Ohrt, who informed him that Dr. Chung was not moved to another office as directed.

After speaking with Ohrt, Brown called Milhous at home and asked him who modified the directive to have Dr. Chung moved to another office. Milhous stated that he modified the directive. On February 21, 2001, Milhous stopped Moret while she was on her way into work and asked to "have a word with her." Milhous informed Moret, in the middle of public hallway, that he was placing Dr. Chung on "office arrest," meaning Dr. Chung could not leave his office during business hours, instead of moving Dr. Chung to another building as Brown had directed. Milhous also announced that he was moving Moret's inbox to a different part of the office, and Moret was to process vouchers and place orders with a different person.

WRAIR initiated a three part "military investigation" on February 21, 2001. The purpose of this investigation was to determine: (1) whether Dr. Chung, in his capacity as Chief of the Department of Pharmacology, sexually harassed two female contract employees by either creating a hostile work environment, or engaging in *quid pro quo* sexual harassment; (2) whether WRAIR management properly addressed the sexual harassment allegations when the female contract employees documented the allegations; and (3) whether there existed a need for additional training for managers, federal government employees, and contract employees regarding how to report and respond to sexual harassment allegations. On March 21, 2001, the first part of the investigation was concluded and the investigator found that the preponderance of evidence indicated that Dr. Chung sexually harassed Moret. The investigator also declared that Moret was a credible witness who described the incidents in detail.

On April 17, 2001, WRAIR initiated the second part of this military investigation to determine

whether or not Milhous properly handled Moret's complaint and instituted proper prophylactic measures. The next day, Moret met with EEO officer Mark Loberg ("Loberg") to discuss the findings of the first investigation phase.  At this meeting, Loberg presented Moret with a "Notice of Right to File a Formal Complaint" for her to sign, and he affirmatively stated that she was prohibited from initiating a formal EEO investigation until WRAIR completed phase two and three of its military investigation into Milhous's conduct and into the need for additional WRAIR manager training.  Loberg stated that he would notify Moret after WRAIR completed its military investigation and also when she could file her formal complaint. Moret failed to file a formal EEO complaint by the regulatory deadline of May 2, 2001.

On January 15, 2001, Thomas F. Dickerson ("Dickerson") of the EEO office informed Moret that WRAIR had completed its "military" investigation on May 15, 2001.  When Moret asked about her rights to further investigation, Dickerson replied that she no longer had the right to file a formal complaint because she had not filed the complaint within fifteen days of having received the "Notice to File a Formal Complaint" on April 18, 2001.

Moret nevertheless attempted to file a formal complaint via letter to Loberg on March 22, 2002, citing her reasons for delay.  In the letter, Moret reminded Loberg that he assured her that she had done everything necessary to bring her complaint.  Moret also told Loberg that he never advised her that she needed to do anything further until after the "military" investigation was finished.  After receiving the results of the investigation, Moret sent a letter to Karen Ruby at the Walter Reed EEO office requesting that she either process Moret's formal complaint or issue a notice that the EEO office will not process the complaint.  On September 10, 2002, Moret received a letter from Dickerson again restating WRAIR's position that it would not process her complaint because her formal complaint was untimely.

6

Moret then appealed to EEOC, requesting that her March 22, 2002 formal complaint letter be considered timely in light of the fact that she was given false, misleading advice from Loberg.  On April 10, 2003, the EEOC dismissed Moret's appeal finding that Moret failed to timely file her administrative complaint.

Moret subsequently filed a complaint in federal court.  Moret filed an Amended Complaint, and a Second Amended Complaint, alleging discrimination based on sex in violation of Title VII (count I) and retaliation for having engaged in a protected activity in violation of Title VII (count II).

On December 1, 2004, Defendant filed a Motion to Dismiss or, in the alternative, for Summary Judgment.  This motion is ripe, and an opinion is now issued.

## STANDARD OF REVIEW

A.      Rule 12(b)(6) Conversion

When "matters outside the pleadings are presented to and not excluded by the court, [a 12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b).  In interpreting the requirements of this rule, the Fourth Circuit has held that the term "reasonable opportunity" requires that all parties be given "some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits and pursue reasonable discovery." Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985) (citations and quotations omitted).  However, when a party is "aware that material outside the pleadings is before the court," the party has notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment. Id.  However, notification that a Rule 12(b)(6) motion may be converted is only

one of the requirements of Rule 12.  Before a Rule 12(b)(6) motion may be converted and summary judgment granted, the court must be satisfied that the nonmoving party "has . . . had the opportunity to discover information that is essential to [its] opposition." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986) (citations omitted).

Moret had adequate notice that Defendant's motion might be treated as one for summary judgment. The motion's alternative caption and attached materials are themselves sufficient indicia.  See Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998).   Still, notice is not enough. Once notified, a party must be afforded a "reasonable opportunity for discovery" before a Rule 12(b)(6) motion may be converted and summary judgment granted.  Gay, 761 F.2d at 177.  Such an opportunity was not afforded in the instant case.

Moret has filed, contemporaneously with her opposition, a motion to permit discovery under Rule 56(f).  See Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995) ("[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit.").

In her affidavit, Moret focuses the court's attention on specific legitimate needs for discovery. Moret points out that her claims remain undeveloped because discovery has not occurred and several areas of inquiry which would support material fact issues remain outstanding and require further discovery.  In particular, because Moret has not been allowed to conduct discovery, she cannot not effectively and properly oppose Defendant's motion for summary judgment.  Additionally, Moret has not had the opportunity to conduct key depositions so she is unable to rebut Defendant's allegations that she is not an employee of WRAIR and that she is not entitled to the application of equitable tolling principles.  As such,

Moret has shown that there are colorable issues for which discovery is necessary. Accordingly, this Court will construe Moret's motion as simply a Motion to Dismiss pursuant to Rule 12(b)(6).

B.      Rule 12(b)(6) Standard

Under Rule 12(b)(6), dismissal of a complaint for failure to state a claim is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When ruling on a motion to dismiss under Rule 12(b)(6), a court must accept the allegations contained in the complaint as true. See DeBauche v. Trani, 191 F.3d 499, 505 (4th Cir. 1999) (citations omitted). When deciding a Rule 12(b)(6) motion, a court should only consider the pleadings, disregarding the affidavits or other materials. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## DISCUSSION

I.      Motion to Dismiss

Moret alleges discrimination based on sex in violation of Title VII and retaliation for having engaged in a protected activity in violation of Title VII. In particular, Moret's first allegation of discrimination occurred during a meeting with Dr. Chung on May 12, 2000 and Moret's other allegations of discrimination occurred in various events between September 2000 and September 2001. Defendant alleges that Moret fails to state a claim of discrimination because she is not an "employee" as defined by Title VII, and otherwise she failed to exhaust her administrative remedies. This Court will address each argument in turn.

A.      Claim of Discrimination based on "employee"

Title VII prohibits employment discrimination based on race, color, religion, sex, or national origina. 42 U.S.C. § 2000e, et seq. Although Title VII did not originally extend to discrimination in the federal

workplace, see § 2000e(b) (excluding federal government from definition of "employer"), Congress

amended Title VII in 1972 by explicitly waiving sovereign immunity with respect to employment

discrimination.  King v. Dalton, 895 F.Supp. 831, 836 (E.D. Va. 1995) (citing 42 U.S.C. § 2000e-16).

The Supreme Court has held that §2000e-16 "provides the exclusive judicial remedy for claims of

discrimination in federal employment."  Brown v. General Servs. Admin., 425 U.S. 820, 835 (1976).

Therefore, the Army's liability, if any, must be found in accordance with the strictures of § 2000e-16.

Section 2000e-16, entitled "Employment by Federal Government," provides, in pertinent part:

All personnel actions affecting employees or applicants for employment . . . in military
departments . . . shall be made free from any discrimination based on race, color, religion,
sex, or national origin.

§ 2000e-16.  Accordingly, a threshold requirement for imposing Title VII liability against the federal

government is that the plaintiff be an "employee [] or applicant [] for employment" of the defendant federal

agency, in this instance, the United States Army.

Defendant first alleges that Moret was statutorily exempt from being a federal employee during the

term of her first contract and, therefore, her claims of discrimination during this period, i.e., May 12, 2000,

must be dismissed.  This Court agrees.

Pursuant to 10 U.S.C. § 2360, in pertinent part:

Students providing services pursuant to a contract made under subsection (a)[1] shall be
considered to be employees for the purpose of chapter 81 of title 5, relating to
compensation for work injuries, and to be employees of the government for the purpose

---

[1] Section 2360, subsection A, provides in pertinent part: "the Secretary of Defense may
procure by contract under the authority of this section the temporary or intermittent services of students
at institutions of higher learning for the purpose of providing technical support at defense research and
development laboratories."  10 U.S.C. § 2360(a).

of chapter 171 of title 28, relating to tort claims. Such students who are not otherwise employed by the Federal Government **shall not be considered to be Federal employees for any other purpose**.

10 U.S.C. § 2360(b).

As applied here, Moret first contracted with WRAIR as a student under the authority of 10 U.S.C. § 2360. Pursuant to Section 2360, Moret was a student contractor and not a federal employee during the term of the contract — October 1, 1999 through September 30, 2000. Moret's first allegation of discrimination occurred during a meeting with Dr. Chung on May 12, 2000. It is undisputed that Moret was not a federal employee at the time of the alleged discrimination on May 12, 2000. Because Moret was not a federal employee she has failed to assert a Title VII claim against the Army, and her claim of discrimination on May 12, 2000, is hereby dismissed.

Defendant next argues that Moret was merely an independent contractor and thus Title VII is not applicable. Each side concedes that Title VII only applies if Moret was an employee of the Army. See 42 U.S.C. § 2000e(f) (defining "employee" as "an individual employed by an employer"). Based on the common law agency definition of employee, the Supreme Court has identified the following factors as relevant to the determination of whether an individual is an employee or an independent contractor:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. No one of these factors is determinative.

Comm. for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989) (citations and footnotes omitted). The Fourth Circuit recently applied these factors and added that the parties' beliefs regarding the nature of the employment relationship are significant. Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 259-63 (4th Cir. 1997).

The Fourth Circuit has emphasized that the touchstone inquire enunciated in Reid addresses the degree of the "hiring party's right to control the manner and means by which the product is accomplished." Farlow v. Wachovia Bank of North Carolina, 259 F.3d 309, 313 (4th Cir. 2001) (citations omitted). The degree of control considers the degree of control of the professional services rendered rather than "peripheral, administrative details which were incidental to the rendering of . . . services." Id. at 314.

Here, although Moret volunteered her services as a Biological Laboratory Technician from October 2000 through September 2001, Moret appears to allege that she was under the direct control of Dr. Chung. In particular, Moret alleges that Dr. Chung hired Moret for a paid Research Assistant position and offered to pay her out of his own contract money. Moret also asserts that Dr. Chung was the supervisor to whom she reported and he set her hours of work. Moret alleges that she was required to comply with these administrative details through the oversight of Dr. Chung. Moret further alleges that her office is maintained at WRAIR, and she utilizes WRAIR's supplies and equipment to perform her tasks. Further, Moret alleges that she is a recent college graduate, that she is not a specialist, and accordingly her work is closely supervised. Moreover, Moret asserts that Dr. Chung exercised the right to increase Moret's salary and benefits. In particular, Moret alleges that Dr. Chung paid her salary. Moret alleges that Dr. Chung had the authority to appoint her to a civil service position that would accord her full health benefits, and that he would only exercise such authority if she complied with his requests. Finally, Moret alleges that

she had a long term relationship with Defendant, and not one that terminates once a certain project is completed.

Based on the aforementioned, Moret has alleged sufficient facts, which if proven, may demonstrate that Defendant exercised a right of control over her employment, and therefore Moret was not an independent contractor.  To the extent that Defendant contends that Moret has failed to produce evidence to support her assertions that Defendant had a right of control over her employment, such an inquiry is premature at this stage and is more appropriate for a determination on summary judgment grounds following reasonable discovery.[2]

B.      Failure to Exhaust Administrative remedies

Even assuming Moret is an employee of the Army, Defendant alleges that she failed to exhaust her administrative remedies.  Prior to bringing a civil complaint, federal employees must first exhaust their administrative remedies.  See Khoury v. Meserve, 268 F.Supp.2d 600, 607 (D. Md. 2003) ("Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies . . . .").

Moret alleges that her first instance of sex discrimination was when her and Dr. Chung had a meeting on May 12, 2000 and the second instance of sex discrimination occurred when Dr. Chung entered

---

[2] Moret also asserts, in the alternative, that she is an "applicant for employment" for purposes of Title VII.  Specifically, Moret claims that "When Dr. Chung offered benefits and a civil service position to Ms. Moret, Ms. Moret became an applicant for employment."  This argument is unpersuasive.  The Fourth Circuit has made clear that "if an employer has a formal system of posting vacancies and allowing employees to apply for such vacancies, an employee who fails to apply for a particular position cannot establish a prima facie case of failure to promote."  Williams v. Giant Food, Inc., 370 F.3d 423, 430 (4th Cir. 2004).  Here, it is undisputed that Moret did not apply for a specific position and, therefore, her assertion that she was an "applicant for employment" fails as a matter of law.

her office on October 17, 2000.[3]  As a federal employee, Moret was required to seek EEO counseling

regarding the alleged discriminatory acts by the agency within 45 days of the date the events occurred.  <u>See</u>

29 C.F.R. § 1614.105(a)(1).  If the counseling session is unsuccessful, an employee is required to file a

formal complaint with the agency within fifteen days of receiving notice to do so.  <u>See</u> 29 C.F.R. §

1614.106.  Moret, however, did not seek EEO counseling with regards to her alleged discriminatory event

until February 9, 2001, more than 273 days after the first alleged instance of discrimination and 115 days

after the second alleged instance of discrimination took place.  Additionally, it is undisputed that Moret

failed to ever file a formal complaint, much less file within the 15 day requirement.  As such, Moret's failure

to timely initiate EEO counselor contact and to file a formal complaint are grounds for dismissal for failure

to exhaust administrative remedies.  <u>See</u> <u>Zografov v. VA Med. Cntr.</u>, 779 F.2d 967, 970 (4th Cir.1985).


Therefore, unless Moret's claims fall within an exception, her claims must be dismissed for failure

to exhaust administrative remedies.  Moret argues that two exceptions apply to this case:  the continuing

violation theory and equitable estoppel.  The Court will address each argument in turn.

 *i.  Continuing Violation Theory*

 Moret argues that her complaint should not be dismissed because hostile work environment sexual

harassment constitutes a "continuing violation."  In particular, Moret claims that the May 12, 2000 and

October 17, 2000 instances of discrimination continued until February 9, 2001, the date she sought EEO

_____

[3] The Court notes that Moret also alleges an instance of sexual discrimination when she had a
meeting with Dr. Chung on May 12, 2000.  Because this claim has been dismissed, the Court
addresses this argument only in the alternative.

counseling.

In <u>Nat'l RR Passenger Corp. v. Morgan</u>, 536 U.S. 101, 122 (2002), the Supreme Court explained that a "hostile work environment claim is comprised of a series of separate acts that collectively constitute 'one unlawful employment practice.'" Based on that premise, the Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory period." <u>Id.</u> at 105; <u>see also</u> <u>id.</u> at 116 ("Provided that an act contributing to a claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability.").

Moret's Second Amended Complaint alleges a "sexual advance," and alleges that she did not submit to this sexual advance. Moret's Second Amended Complaint also incorporates Moret's details as to place and circumstance. On October 17, 2000, Dr. Chung came into Moret's office Moret alleges that Dr. Chung repeatedly asked her if she had "strong fingers" to enable her to administer a nude massage on him. Prior to, and continuing on February 9, 2001, she was forced to work with Dr. Chung on a daily basis and during this time, Dr. Chung continuously "gawked" at her and made her feel uncomfortable. Dr. Chung also directly implied that he would only appoint her to such a civil service position if she would comply with his requests. Construing the complaint in the light most favorable to Moret, Dr. Chung's "strong fingers" remark plausibly be viewed as part of an unwelcomed sexual advance. Also, Moret's claims she had "continual daily contact" with a supervisor implying that he would only appoint her to a position with full benefits if she complied with his advances, is sufficient to plead a prima face case of sexual harassment,

based on hostile work environment, under Title VII.[4]

Because Moret has alleged facts that support a hostile work environment claim, <u>Morgan</u> directs that the Court should consider all of Moret's claims, even those falling outside the 300 day time-period, i.e., those claims prior to, and continuing on February 9, 2001.  <u>Id.</u> at 122.

    ii.    *Equitable Estoppel*

Moret also contends that Defendant should be estopped from asserting her failure to timely seek EEO counseling as a bar to her complaint.  Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.   <u>Mezu v. Morgan State Univ.</u>, 264 F.Supp.2d 292, 295 (D. Md. 2003) (citing <u>English v. Pabst Brewing Co.</u>, 828 F.2d 1047, 1049 (4th Cir. 1987)).  To invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge.  <u>Id.</u>

Moret contends that following the advice of Loberg, she was misled as to her ability to file her request for a formal investigation.  It is undisputed that Moret signed multiple documents attesting to her understanding that she had only 15 days to file a formal complaint.  Nevertheless, Moret has alleged that Loberg explicitly instructed her that, notwithstanding the language in the documents, WRAIR had to initiate a formal military investigation, and that investigation was still ongoing.  Moret also alleges that Loberg

---

[4] To plead a prima facie case of sexual harassment under Title VII based on hostile work environment, a plaintiff must show:  "(1) that the harassment was because of her sex; (2) the harassment was unwelcomed; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer."  <u>EEOC v. R&R Ventures</u>, 244 F.3d 334, (4th Cir. 2001).

informed her that she would be unable to file a request for a formal investigation until the Army had completed its military investigation.  These facts, if proven, demonstrate that Defendant misled Moret about the filing requirements of her formal complaint.   Moreover, it is undisputed that Moret never attempted to file a formal complaint until after the limitations period expired.  Thus, Moret has alleged facts, that if proven, demonstrate that she relied upon Loberg's advice.  Accordingly, equitable tolling principles apply, and this Court will therefore not dismiss Moret's complaint as time-barred.

II.     Motion to Stay

Moret has also filed a Motion to Stay Consideration of Defendant's Motion for Summary Judgment.  As the basis of her motion, Moret alleges that should be permitted discovery into the merits of her case because she cannot properly rebut Defendant's allegations that she is not an employee of WRAIR and that equitable tolling principles are appropriate.   As this Court has already decided to convert Defendant's motion into a Motion to Dismiss pursuant to Rule 12(b)(6), this Court must deny Moret's motion as moot.

**CONCLUSION**

For the aforementioned reasons, Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment shall be treated as a Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6). Defendant's Rule 12(b)(6) motion is GRANTED-IN-PART, and DENIED-IN-PART.   Specifically, Moret's claim of discrimination on May 12, 2000, is hereby dismissed, and Moret's remaining claims of discrimination remain pending.  Moret's Motion to Stay Consideration of Defendant's Motion for Summary Judgment is DENIED-AS-MOOT.  An order consistent with this Opinion will follow.

<u>August 2, 2005</u>                              <u>               /s/               </u>
Date                                        Alexander Williams, Jr.
                                               United States District Judge